IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

WILLIE SUMPTER,

                          Plaintiff,              Civil Action No.
                                                  9:05-CV-0868 (TJM/DEP)

          v.

D. SKIFF, Counselor, Gouverneur Correctional
Facility, and GLENN S. GOORD, Commissioner,

                    Defendants.

─────────────────────────────────────

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

WILLIE SUMPTER, *Pro Se*


FOR DEFENDANTS:

HON. ANDREW M. CUOMO            MICHAEL G. McCARTIN, ESQ.
New York State Attorney General   Assistant Attorney General
State of New York
The Capitol
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

          Plaintiff Willie Sumpter, a former New York State prison inmate who

was released to parole supervision but is now apparently in the custody of

New York City correctional officials, has commenced this action pursuant to 42 U.S.C. § 1983 claiming deprivation of his civil rights.[1]  In his complaint Sumpter, who is proceeding *pro se* and *in forma pauperis*, challenges recommendations of prison officials that he participate in specified prison programs in order to qualify for temporary release and/or parole, alleging that those directives were arbitrary and capricious and resulted in infringement upon his genuinely held religious beliefs and compelled self-incrimination.  As relief, plaintiff's complaint seeks compensatory and punitive damages in a total amount of $350,000 against each of the two named defendants.[2]

In response to plaintiff's complaint, the two named defendants have moved seeking its dismissal on a variety of grounds including, *inter alia*,

---

[1]    According to records plaintiff lists his current address as A.M.K.C. at 18-18 Hazen Street in East Elmhurst, New York.  According to publically available information that address coincides to the Anna M. Kross Center, one of the Ryker's Island facilities operated by the New York City Department of Correction.  *See* http://www.nyc.gov/html/doc/html/about/locate_facility.shtml, last visited August 21, 2008.

[2]    Although injunctive relief was not specifically sought in plaintiff's complaint, following commencement of the action Sumpter applied for the issuance of a preliminary injunction directing his immediate release from incarceration.  Dkt. No. 22.  That motion was denied by order issued by Senior District Judge Thomas J. McAvoy on November 28, 2006, Dkt. No. 29, based upon the fact that it sought injunctive relief against the New York State Division of Parole, a non-party.  Dkt. No. 29.  The denial of interim injunctive relief was upheld on interlocutory appeal to the United States Court of Appeals for the Second Circuit by summary order issued on January 15, 2008 and an ensuing mandate dated April 9, 2008.  *See* Dkt. No. 35.

2

procedurally based upon plaintiff's alleged failure to exhaust available

administrative remedies before filing suit, and on the merits, additionally

asserting their entitlement to qualified immunity.  Having carefully

reviewed defendants' pre-answer motion, which is opposed by the plaintiff,

I recommend denial of the portion of defendants' motion which relies upon

failure to exhaust as a basis for dismissal, finding it to be legally deficient,

but nonetheless recommend dismissal of plaintiff's claims as a matter of

law both on the merits and based upon lack of personal involvement.

I.    BACKGROUND[3]

Prior to his release to parole supervision on or about February 27,

2006, plaintiff was a prison inmate entrusted to the custody of the New

York State Department of Correctional Services (the "DOCS").[4]  *See*

_____

[3]     The following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion, as well as the attached exhibits.  *See Erickson v. Pardus*, _U.S._, 127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, _U.S._, 127 S. Ct. 1955, 1965, (2007); *see also Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).  I note that plaintiff's opposition to defendants' motion includes materials other than a memorandum.  To the extent that some of those materials are not attached as exhibits to Sumpter's complaint, they have not been considered by the court in light of the procedural posture of the case.  *See Procapui-Productores de Camaroes De Icapui Ltda. v. Layani*, No. 07-CV-6627, 2008 WL 3338199, at *2 (S.D.N.Y. Jan. 11, 2008).

[4]     The information surrounding plaintiff's release has been obtained from publically available sources, including through the New York State prison inmate locator service, see http://nysdocslookup.docs.state.ny.us, as confirmed by a notice of change of address filed by the plaintiff on March 7, 2006 reflecting a Brooklyn, New York non-prison address.  Dkt. No. 17.

*generally* Amended Complaint (Dkt. No. 5).  Plaintiff's incarceration

resulted from convictions entered in Queens County Supreme Court for

robbery in the second degree and menacing.  *See* Amended Complaint

(Dkt. No. 5) Exh. A.  At the times relevant to his claims in this action,

plaintiff was designated to the Gouverneur Correctional Facility

("Gouverneur"), located in Gouverneur, New York.  *See id.*

The underpinnings of plaintiff's claims are somewhat difficult to

discern from his complaint.  It appears that the circumstances forming the

basis for those claims were set in motion in or about November of 2003

when plaintiff's request for participation in a temporary release program,

was denied.[5]  *See* Defendants' Motion (Dkt. No. 19) Exh. 1.  Records

related to that denial reflect a "VFO Override" apparently to ameliorate the

fact that under controlling policies plaintiff's conviction would otherwise

have the effect of disqualifying him from consideration.[6]  To enhance

_____

[5]      The exhibits attached to defendants' motion represent those which were
incorporated into plaintiff's amended complaint, organized and renumbered for ease of
reference.  *See* Defendants' Memorandum (Dkt. No. 19-2) at p. 3, n.1.  For the sake of
convenience and clarity I will utilize defendants' numbering when citing those exhibits.

[6]      While this is not clearly spelled out, the court assumes that the term
"VFO Override" refers to plaintiff's alleged status as a violent felony offender.  Under
the governing regulations, a violent felony offender is ineligible for participation in a
temporary release program absent such an override.  9 N.Y.C.R.R. § 5.5; *see Doe v.
Goord*, No. 04 Civ. 0570, 2005 WL 3116413, at *3 (S.D.N.Y. Nov. 22, 2005).

Sumpter's chances of qualifying for temporary release eligibility defendant D. Skiff, plaintiff's counselor, encouraged him to apply for participation in the Comprehensive Alcohol and Substance Abuse Treatment (CASAT), a drug abuse program operated at the prison.  *See* Amended Complaint (Dkt. No. 5) ¶ 2.

Sumpter's prospects for temporary release were significantly diminished when he was subsequently denied entry into the CASAT program.  Amended Complaint (Dkt. No. 5) ¶ 2, Exh. 2; Defendants' Motion (Dkt. No. 19) Exh. 2.  In a notice advising of the denial, plaintiff was informed that the decision was based upon a combination of his lengthy criminal record, history of violence, and multiple parole violations.  *Id*.

Following the rejection of his application for participation in the CASAT program, plaintiff was referred by defendant Skiff into the Residential Substance Abuse Treatment ("RSAT") program, another drug treatment regimen.  Amended Complaint (Dkt. No. 5) ¶ 3.  Plaintiff maintains that the RSAT program runs afoul of his religious beliefs, and additionally would require him to disclose prior drug use, in violation of his Fifth Amendment right against self-incrimination.  *Id*. ¶¶ 3-4.

5

While once again this is far from clear, it appears that defendant

Skiff's plans for plaintiff's participation in the RSAT program were thwarted

when, as a result of the issuance of a misbehavior report and ensuing Tier

II hearing conducted on January 21, 2004, Sumpter was found guilty and

sentenced to a period of thirty days of keeplock confinement, with a

corresponding loss of recreation and special events privileges.[7,8]

Amended Complaint (Dkt. No. 5) ¶ 5; Defendants' Motion (Dkt. No. 19)

Exh. 5.  Apparently as a result of that disciplinary finding, plaintiff was

---

[7]       The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

[8]       Keeplock is a form of confinement restricting an inmate to his or her cell, separating the inmate from others, and depriving him or her of participation in normal prison activities.  *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *Warburton v. Goord,* 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998) (citing *Gittens*); *Tinsley v. Greene*, No. 95-CV-1765, 1997 WL 160124, at *2 n.2 (N.D.N.Y. Mar. 31, 1997) (Pooler, D.J. & Homer, M.J.) (citing, *inter alia*, *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)). Inmate conditions while keeplocked are substantially the same as in the general population.  *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).  An inmate is confined to his or her general population cell for twenty-three hours a day, with one hour for exercise.  *Id.* Inmates can leave their cells for showers, visits, medical exams and counseling.  *Id.* Inmates can have cell study, books and periodicals.  *Id.*  The main difference between keeplock and the general population is that keeplocked inmates do not leave their cell for out-of-cell programs, and are usually allowed less time out of their cells on the weekends.  *Id.*

expelled from RSAT, and later refused re-enrollment in the program.  *Id*.

A portion of plaintiff's complaint relates to an appearance before the facility Time Allowance Committee ("TAC") in April of 2005.  Amended Complaint (Dkt. No. 5) ¶ 6; Defendants' Motion (Dkt. No. 19) Exh. 6. Following that appearance, plaintiff was stripped of all existing good time credits based upon his refusal in September of 2004 to participate in a required RSAT program.  *Id.; see also* Defendants' Motion (Dkt. No. 19) Exhs. 7, 8.  Plaintiff was advised, however, that if he reconsidered his decision and successfully completed the program he could request reconsideration of the decision and reinstatement of the divested good time credits.  Defendants' Motion (Dkt. No. 19) Exh. 8.

Following the decision to withhold good time credits, plaintiff wrote to DOCS Commissioner Glenn S. Goord on May 25, 2005, requesting recision of the TAC's determination.  Amended Complaint (Dkt. No. 5) ¶ 7 and Exh. A.  Both that letter and a second sent by the plaintiff to Commissioner Goord generated responses from Deputy DOCS Commissioner Lucien J. LaClaire, Jr., to whom the matter was referred, ratifying the committee's determination and encouraging the plaintiff to comply with the RSAT requirement and therefore seek reconsideration of

the good time credit.[9]  *Id.*; Defendants' Motion (Dkt. No. 19) Exhs. 10, 11.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on July 13, 2005 and, after filing an

amended complaint on August 19, 2005 at the direction of the court, was

subsequently granted *in forma pauperis* status.  Dkt. Nos. 1, 4, 5, 11.  In

his complaint, as amended, plaintiff names Counselor D. Skiff and DOCS

Commissioner Glenn S. Goord as defendants, and asserts a single cause

of action against each of them alleging impingement upon various

constitutional and common law rights including, *inter alia*, under the First,

Fifth and Fourteenth Amendments to the United States Constitution.[10]

In response to plaintiff's complaint defendants moved on April 13,

2006 seeking dismissal of plaintiff's claims.  Dkt. No. 19.  In their motion,

defendants argue that plaintiff has procedurally forfeited his right to assert

the claims now set forth by virtue of his failure to file and pursue to

---

[9]     Plaintiff's complaint does not disclose whether he accepted that advice
and ultimately participated in the RSAT program.

[10]     In addition to raising constitutional claims, plaintiff's complaint makes
passing reference to claims against defendant Skiff for "violation of a sentence and
Commitment Order, Inadeqorate [sic] program, Arbitrary & Capricious, Breech [sic] of
Contract, Isolation, Humiliation, Cruelty, Extreme Mental Stress, Mental Anguish and
Liberty Interest."  Amended Complaint (Dkt. No. 5).  Finding no allegations in plaintiff's
complaint which would support any cognizable common law claims as cataloged by
Sumpter, I have not addressed those conclusory allegations.

completion an internal administrative appeal regarding the matter.

Defendants also maintain that the claims asserted against them in their

official capacities plaintiff's claims are barred, and additionally argue that

plaintiff's claims against them are subject to dismissal on the merits, both

because they are legally deficient and based on lack of personal

involvement.[11]   Plaintiff has since responded in a combined document

opposing defendants' motion and replying to defendants' opposition to his

application for a preliminary injunction.  Dkt. No. 27.

Defendants' motion, which is now ripe for a determination, has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  See also Fed.R.Civ.P. 72(b).

III.    DISCUSSION

A.    Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, calls upon a court to gauge the

---

[11]    In their motion, defendants also assert that plaintiff's request for
injunctive relief is moot based upon his release from prison, that they are entitled to
qualified immunity, and that he is precluded under 42 U.S.C. § 1997e(e) from
recovering compensatory damages based upon his failure to allege the existence of
any physical injury resulting from the violations claimed.

facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which is particularly unexacting in its requirements.  Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Absent applicability of a heightened pleading requirement such as that imposed under Rule 9, a plaintiff is not required to plead specific factual allegations to support the claim; rather, "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964 (2007) (other quotations omitted)); *cf. Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (acknowledging that a plaintiff may properly be required to illuminate a claim with some factual allegations in those contexts where amplification is necessary to establish that the claim is "plausible").  Once the claim has been stated adequately, a plaintiff may present any set of facts consistent with the allegations contained in the complaint to support his or her claim.  *Twombly*, 127 S. Ct. at 1969 (observing that the Court's prior decision in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957), "described the breadth of opportunity to

prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1722, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (other quotations omitted)). Accordingly, a complaint should be dismissed on a motion brought pursuant to Rule 12(b)(6) only where the plaintiff has failed to provide some basis for the allegations that support the elements of his or her claim. *See Twombly*, 127 S. Ct. at 1969, 1974; *see also Patane v. Clark*, 508 F.3d 106, 111-12

11

(2d Cir. 2007) ("In order to withstand a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'") (quoting *Twombly*).  "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (3d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1974).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action.  *Erickson*, 127 S. Ct. at 2200 ("'[A] *pro se* complaint, however in artfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that

12

a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

      B.   <u>Failure to Exhaust</u>

     As a threshold, procedural matter defendants assert that plaintiff's claims are subject to dismissal based upon his failure to comply with the exhaustion requirements imposed under 42 U.S.C. § 1997e(a).  Based upon plaintiff's complaint and accompanying materials, defendants' motion invites the court to determine, drawing all inferences and resolving all ambiguities in plaintiff's favor, that he neither satisfied the requirements for exhaustion nor can demonstrate any basis to excuse his failure to file and pursue to completion a grievance or appeal regarding the matters in dispute.

     With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights

13

actions.  An integral feature of the PLRA is a revitalized exhaustion of

remedies provision which requires that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct.

2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003,

at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the

dual purpose of affording "prison officials an opportunity to resolve

disputes concerning the exercise of their responsibilities before being

haled into courtl[,]" and to improve the quality of inmate suits filed through

the production of a "useful administrative record."  *Jones v. Bock,* 549

U.S. 199, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see*

*Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386; *see also Johnson v.*

*Testman,* 380 F.3d 691, 697 (2d Cir. 2004).  "[T]he PLRA's exhaustion

requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong."  *Porter,* 534 U.S. at 532, 122

S. Ct. at 992 (citation omitted).

14

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 127 S. Ct. at 918.  In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 94-95, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).  "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).  While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA.  *Macias*, 495 F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98)

(emphasis omitted).

In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement. *Macias*, 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004).  Under the prescribed algorithm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686.  If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions, by preventing the exhaustion of plaintiff's remedies, they should be stopped from asserting failure to exhaust as a defense. *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at 686.  In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to justify the plaintiff's failure to comply with the applicable

16

administrative procedural requirements.[12]  *Macias*, 495 F.3d at 41;

*Hemphill*, 380 F.3d at 686.

### 1.    Availability of Remedy

According to the defendants, there is an established protocol for

appealing TAC determinations.  Defendants assert that the mechanism is

triggered by the filing of a Form 4145 to the Central DOCS office for

review within thirty days of the committee's decision.  7 N.Y.C.R.R.

Section 1900.6(d).  Defendants also contend that the relevant regulations

require that an inmate must file a request for reconsideration by the TAC

as a predicate for seeking such review.  *See* Defendants' Memorandum

(Dkt. No. 19) at p. 5 (citing 7 N.Y.C.R.R. Pt. 262).  For purposes of the

instant motion I have accepted the premise that internal appeal avenues

exist in order to challenge a TAC determination of the nature now

implicated.

### 2.    Presentation of Defense/Estoppel

_____The second prong of the *Hemphill* analysis focuses upon "whether

the defendants may have forfeited the affirmative defense of non-

---

[12]    In practicality these three prongs of the prescribed test, though intellectually distinct, plainly admit of significant overlap.  *See Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *8 n.14 (E.D.N.Y. Jan. 31, 2007); *see also Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

exhaustion by failing to raise or preserve it, or whether the defendants'

own actions inhibiting the inmate's exhaustion of remedies may estop one

or more of the defendants from raising the plaintiff's failure to exhaust as a

defense." *Hemphill,* 380 F.3d at 686 (citations omitted).  In this case no

circumstances have been presented to indicate that by their actions

defendants have either waived or should be estopped from asserting

failure to exhaust as a defense.

### 3.   Special Circumstances

The third, catchall factor to be considered under the Second

Circuit's prescribed exhaustion rubric focuses upon whether special

circumstances have been plausibly alleged which, if demonstrated, would

justify excusing a plaintiff's failure to exhaust administrative remedies.

*Hemphill,* 380 F.3d at 689; *see also Giano v. Goord,* 380 F.3d 670, 676-77

(2d Cir. 2004); *Hargrove,* 2007 WL 389003, at *10.  Among the

circumstances potentially qualifying as "special" under this prong of the

test include where a plaintiff's reasonable interpretation of applicable

regulations regarding the grievance process differs from that of prison

officials and leads him or her to conclude that the dispute is not grievable.

*Giano*, 380 F.3d at 676-77; *see also Hargrove,* 2007 WL 389003, at *10

(quoting and citing *Giano*).

The written notice to Sumpter advising him of the TAC's determination specifically advises that "all time allowance decisions are reviewed automatically by the Commissioner or his designee", going on to provide that "[t]he decision of the Commissioner or his designee is final." Defendants' Motion (Dkt. No. 19) Exh. 8.  Consistent with this prescribed process, plaintiff wrote at least one and, it appears more likely, two letters to Commissioner Goord contesting the TAC's good time denial, generating two separate responses from Goord's designee, Deputy DOCS Commissioner Lucien J. Leclaire, Jr., *Id.* Exhs. 10 and 11; Amended Complaint (Dkt. No. 5) Exh. A.  This, particularly in light of the specific written advice to the plaintiff that Commissioner Goord would be the final arbiter of disputes regarding the TAC's decision, leads me to conclude that defendants have not established plaintiff's failure to avail himself of internal administrative review process warranting dismissal of his claim. *See Heath v. Saddlemire*, No. 96-CV-1998, 2002 WL 31242204, at *4-5 (N.D.N.Y. Oct. 7, 2002) (Scullin, J.).

C.    Eleventh Amendment

Plaintiff's complaint is vague as to whether the two named

defendants are sued as individuals, in their official capacities, or both.
While it appears that defendant Skiff is sued as an individual, plaintiff's
complaint seeks recovery of damages in the amount of $350,000 as
against defendant Goord "under Official Individual Capacities [sic]..."
Amended Complaint (Dkt. No. 5), First and Second Causes of Actions.  To
the extent that the plaintiff is suing Commissioner Goord for damages in
his official capacity, defendants seek dismissal of that claim.

The Eleventh Amendment protects a state against suits brought in
federal court by citizens of that state, regardless of the nature of the relief
sought.  *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58
(1978).  This absolute immunity which states enjoy under the Eleventh
Amendment extends to both state agencies and state officials sued in
their official capacities, when the essence of the claim involved is one
against a state as the real party in interest.[13]  *Richards v. State of New
York Appellate Division, Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y.
1984), (citing *Pugh* and *Cory v. White*, 457 U.S. 85, 89-91 102 S. Ct.

---

[13]     In a broader sense, this portion of defendants' motion implicates the
sovereign immunity enjoyed by the State.  As the Supreme Court has reaffirmed
relatively recently, the sovereign immunity enjoyed by the states is deeply rooted,
having been recognized in this country even prior to ratification of the Constitution, and
is neither dependent upon nor defined by the Eleventh Amendment.  *Northern Ins. Co.
of New York v. Chatham County*, 547 U.S. 189, 193, 126 S. Ct. 1689, 1693 (2006).

2325, 2328-2329 (1982)).  "To the extent that a state official is sued for damages in his official capacity . . . the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."[14]  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985).

Because plaintiff's section 1983 claims against Commissioner Goord in his official capacity are in reality claims against the State of New York, they typify those against which the Eleventh Amendment protects, and are therefore subject to dismissal.  *Daisernia v. State of New York,* 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.).  Accordingly, I recommend that this portion of defendants' dismissal motion be granted.

D.    Personal Involvement

In their motion defendants also seek dismissal of plaintiff's claims against them based upon their lack of personal involvement in the conduct forming the basis for their claims.  Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983.  *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.

---

[14]    By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983.  *See Hafer*, 502 U.S. at 30-31, 112 S. Ct. at 364-65.

1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.

1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert.*

*denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a

section 1983 cause of action against an individual, a plaintiff must show

some tangible connection between the constitutional violation alleged and

that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d

Cir. 1986).

### 1.   Defendant Skiff

According to the defendants, at the heart of plaintiff's complaint is

his challenge of the TAC's decision to strip him of his otherwise available

good time credits.  Defendants assert that because he was not a party to

that decision, defendant Skiff is not subject to liability based upon lack of

personal involvement.

Although somewhat difficult to follow, plaintiff's complaint appears to

challenge both the denial by prison officials of his request for participation

in a temporary release program and the forfeiture of good time credits.

The denial of plaintiff's request for participation in the temporary release

program and of his application for inclusion in the CASAT program

appears to have originated from Deborah Joy, the Director of Temporary

22

Release Programs at Gouverneur.  Defendants' Motion (Dkt. No. 19) Exh.

1.  While defendant Skiff is listed on one of the relevant documents as

plaintiff's counselor, there is no indication that he participated in the

decision making process with respect to those determinations.  In light of

his lack of involvement in those determinations, defendant Skiff is entitled

to dismissal of the portion of plaintiff's claims related to those denials.

A different situation is presented with respect to plaintiff's good time

credit denial claims.  Plaintiff's complaint asserts that the divesture of his

good time credits is directly attributable to his refusal to undergo

recommended RSAT training.  Amended Complaint (Dkt. No. 5) ¶¶ 3,6.

The recommendation for that training is alleged to have been made by

defendant Skiff.  *Id.* ¶ 3.   Under the circumstances, I am unable to

conclude at this early procedural juncture that defendant Skiff lacked any

personal involvement in constitutional violations which may have resulted

from that recommendation and the ensuing in TAC determination.

      2.    <u>Defendant Goord</u>

Plaintiff's claims against Commissioner Goord appear to stem

principally from his position as a supervisor, and from his failure to act to

plaintiff's satisfaction in response to his letters complaining of the TAC's

decision.  Defendants assert that this limited involvement is insufficient to establish a basis for liability.

It is well-established that a supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways including when he or she 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring.  *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007); *see also Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Had Commissioner Goord disregarded plaintiff's letters to him altogether, in all likelihood there would be no basis for holding him accountable for any constitutional violations complained of in those letters.

24

*See Greenwaldt v. Coughlin*, No. 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations.") (citing *Garrido v. Coughlin*, 716 F. Supp. 98, 100 (S.D.N.Y.1989) (dismissing claim against superintendent of prison where only allegation was that he ignored inmate's request for an investigation)).  In this instance Commissioner Goord did not ignore plaintiff's letters, but instead delegated the task of investigating and responding to a deputy commissioner.  Having taken that measure, it is hard to imagine that Commissioner Goord could now be exposed to greater liability for the constitutional deprivations which allegedly occurred than had he simply ignored the letters all together.  *See Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) (Hurd, D.J.).  Accordingly, I recommend dismissal of all of plaintiff's claims against defendant Goord, based upon the lack of his personal involvement.

     E.    <u>Plaintiff's Due Process Claims</u>

     At the heart of plaintiff's claims is his disagreement with the decisions to deny him temporary release, and to strip him of good time

credits.  Plaintiff contends that those decisions were the product of due process deprivations.

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).  The procedural safeguards to which a prison inmate is entitled, while to some degree having a common denominator, are dependent upon the nature of the deprivation at stake. Before being subjected to prison discipline of sufficient severity to trigger the protections of the Fourteenth Amendment, for example, a prison inmate must be provided with 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense.  *Wolff v. McDonnell*, 418 U.S.

26

539, 564-67, 94 S. Ct. 2963, 2978-80 (1974); *see also Eng v. Coughlin*,

858 F.2d 889, 897-98 (2d Cir. 1988).  In order to pass muster under the

Fourteenth Amendment, hearing officer's disciplinary determination must

garner the support of at least "some evidence".  *Superintendent v. Hill*,

472 U.S. 445, 105 S. Ct. 2768 (1985).

  Defendants argue that plaintiff's procedural due process claims are

fatally defective based upon his failure to identify a cognizable liberty or

property interest of which he was deprived.  As the party asserting a

constitutional violation, plaintiff bears the burden of establishing the

deprivation of a cognizable liberty or property interest sufficient to invoke

the requirements of the Fourteenth Amendment.  *Tellier*, 280 F.3d at 79-

80.  In this instance plaintiff has failed to do so.  At the outset it should be

noted as a New York State inmate, plaintiff possessed no constitutionally

cognizable right to be released on parole or to participate in prison

programs.  *See Boothe v. Hammock,* 605 F.2d 661, 664 (2d Cir. 1979) (no

constitutionally protectable expectation of parole entitling an inmate to due

process safeguards); *see also Larocco v. New York State Div. of Parole,*

No. 9:05-CV-1602, 2006 WL 1313341, at *2 (N.D.N.Y. May 12, 2006)

(McAvoy, C.J.); *Gissendanner v. Menifee,* 975 F. Supp. 249, 251

(W.D.N.Y. 1997) (citing *Deutsch v. United States,* 943 F. Supp. 276

(W.D.N.Y. 1996)).  Similarly, as a prison inmate plaintiff had no cognizable

liberty interest in participation in an early release program.  *See Lee v.*

*Governor of State of New York ,* 87 F.3d 55, 58 (2d Cir. 1996) (holding

that a rule rendering inmate eligible for temporary release program did not

implicate an interest protected by the Fourteenth Amendment).  Since

plaintiff has failed to identify a legally cognizable property liberty interest of

which he was denied, the due process requirements of the Fourteenth

Amendment are not implicated, and his due process claims are subject to

dismissal as a matter of law.

Even assuming *arguendo* that plaintiff could establish that he was

deprived of a cognizable liberty interest, he also has failed to allege in

what way his procedural due process rights were infringed.  The contours

of the process required to be followed when good time credits are

withheld, although not precisely defined, can be drawn by analogy from

the Supreme Court's decision in *Wolff*, dealing with inmate disciplinary

proceedings.  The rights afforded under *Wolff* include entitlement to a

hearing and notification of the hearing results and the reasons for the

action taken.  In this instance, the TAC's decision was preceded by a

28

hearing.  While plaintiff maintains that no record was made of the hearing,

there is no written constitutional requirement that such a hearing be

recorded.  *Dawes v. Selsky*, No. 91-CV-0576E, 1993 WL 124696, at *2

(W.D.N.Y. Apr. 16, 1993).  Following that hearing, plaintiff was afforded an

appeal mechanism, which included review by the DOCS Commissioner.

Under these circumstances, plaintiff has failed to plead a plausible, *prima

facie* violation of due process even assuming the applicability of the

Fourteenth Amendment to the TAC's decision.

      F.   <u>First Amendment</u>

      Embedded within plaintiff's complaint is a claim that his First

Amendment rights were violated by the defendants.  That claim is

predicated upon the argument that by requiring him to participate in RSAT

training prison officials were essentially forcing him to engage in acts

which violate his genuinely held religious beliefs.  Amended Complaint

(Dkt. No. 5) ¶ 3.

      Had this argument been asserted several years ago, it likely would

have been regarded as potentially meritorious.  In *Warner v. Orange

County Dep't of Probation*, the Second Circuit concluded that the twelve

steps of Alcoholics Anonymous ("AA"), apparently then a part of the RSAT

curriculum, was religious in nature for purposes of the establishment

clause of the First Amendment and, accordingly, held that inmates could

not be forced to participate in that program.  115 F. 3d 1068, 1074-76 (2d

Cir. 1997).  In response to that and other similar decisions, however, the

DOCS has since apparently designed a secular curriculum, known as the

cognitive behavior therapy ("CBT") program, which is made available to

any inmate raising religious objections to the content of other treatment

regimens. *See* Defendants' Memorandum (Dkt. No. 19-2) at p. 14.

Accordingly, there is no basis to conclude that plaintiff's required

participation in the RSAT program would violate his religiously held

beliefs.

      G.    Fifth Amendment

      As yet another basis to challenge the requirement that he participate

in RSAT training before his good time credits are reinstated, plaintiff

alleges that his Fifth Amendment rights against self-incrimination would

necessarily be violated.  In support of this contention, plaintiff posits that

as part of the RSAT treatment modality he would undoubtedly be required

to divulge specifics regarding his prior drug use and potential criminality

for conduct not only for which he was convicted, but also for other

unprosecuted acts.

To be sure, the policy of requiring sex offender treatment for DOCS inmates during which they are required to discuss their prior sexual history, including acts for which they have never been charged, has been found to implicate the Fifth Amendment's right against self-incrimination. *See, e.g., Donhauser v. Goord*, 314 F. Supp. 2d 119, 124 (N.D.N.Y. 2004) (Hurd, J.), *vacated and remanded*, 181 Fed. Appx. 11 (2d Cir. Mar. 22, 2006) (unpublished disposition). In that case, however, it appeared clear from the course curriculum that discussion of prior uncharged acts of criminality would potentially be disclosed during the program. Even then, the Second Circuit noted that it was possible the Fifth Amendment concerns could be alleviated by other less restrictive means than by eliminating the requirement of the program altogether such as, for example, through offering of immunity from prosecution. *Donhauser*, 181 Fed. Appx. at 12.

In this instance it is far less clear that during the course of the RSAT training plaintiff would be required to disclose that he committed criminal acts for which he was not prosecuted. Indeed, plaintiff has only his pure speculation to support this claim and, unlike the plaintiff in *Donhauser*,

31

does not cite to any portions of the established RSAT curriculum that would require disclosure of prior criminal conduct.

A fundamental jurisdictional predicate to the exercise of jurisdiction by a federal court is that a case or controversy meeting the definition set out in Article III of the Constitution be presented. *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 341-42, 126 S. Ct. 1854, 1861 (2006). The case and controversy principle includes the requirement of ripeness, meaning that the claim to be litigated is at a point where it is squarely in dispute and presented to the court for disposition. *Burt v. Rumsfeld*, 322 F. Supp. 2d 189, 200-01 (D. Conn. 2004).

In this instance, the Fifth Amendment issue now raised by the plaintiff is far from ripe. Plaintiff has refused to take the RSAT program without first ascertaining that during the course of that program he would indeed be compelled to disclose prior acts which could be criminal in nature. In addition, like the defendant in *Donhauser*, plaintiff has not probed whether prison officials would permit disclosure of those acts under a grant of immunity. Under these circumstances, I recommend a finding that plaintiff's Fifth Amendment claims are not ripe for determination, and subject to dismissal on this prudential basis.

32

IV.   SUMMARY AND RECOMMENDATION

Plaintiff's complaint in this action is built around two adverse determinations.  First, his referral into the CASAT program, apparently as a precursor to his eligibility for temporary release, was rejected based upon factors including his criminal history.  There is nothing in plaintiff's complaint or the supporting documents, however, to suggest personal involvement in that decision on the part of either of the named defendants in the action.

The second component of plaintiff's claims surrounds his refusal to participate in the required RSAT programming.  The recommendation that he do so was made by his counselor, defendant Skiff, apparently to assist the plaintiff in qualifying for a temporary release program, after first having secured a VFO override to negate the consequences of his robbery conviction.  Out of his disagreement with that recommendation and his desire not to participate in the RSAT programming despite this benefit perceived by his counselor, plaintiff lost good time credits.  While plaintiff obviously disagrees with the RSAT recommendation of his counselor, it is not the function of this court to micromanage the New York prison system or to second guess officials, including those regarding programming.  The

court's function in a case of this nature is to ensure that the rights guaranteed to a prison inmate by the United States Constitution and federal law are protected.  Discerning no basis to conclude that plaintiff's constitutional rights were violated by defendant Skiff's recommendation and the resulting loss of good time credits, in light of plaintiff's failure to follow that recommendation, I recommend that plaintiff's complaint be dismissed, with leave to replead.  *See Branum*, 927 F.2d at 704-05. Based upon the foregoing, it is hereby

RECOMMENDED, that defendants' motion to dismiss plaintiff's complaint for failure to state a claim (Dkt. No. 19) be GRANTED, and that plaintiff's complaint be DISMISSED in all respects, with leave to replead.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge


Dated:      August 29, 2008
            Syracuse, NY

35